UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:16-cv-00194-MOC-DSC

| | | |
|---|---|---|
| **JONATHAN COLLIER** | ) | |
| **ROBERT MCQUEN,** | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| **RD AMERICA, LLC** | ) | |
| **JETRO HOLDINGS, LLC** | ) | |
| **RESTAURANT DEPOT, LLC,** | ) | |
| | ) | |
| Defendants. | ) | |

**THIS MATTER** is before the court on defendants' Motion for Judgment on the Pleadings

(#19). Having considered the motion and reviewed the pleadings, the court enters the following

Order.

I.       **Introduction**

Plaintiffs were former managers of the defendants' location in Charlotte, North Carolina.

Plaintiff McQuen was hired in April 2010. Plaintiff Collier was hired in July 2009. Both were

terminated in 2014. The plaintiffs have lodged an employment discrimination and wrongful

discharge complaint against their former employer, asserting claims under Title VII of the Civil

Rights Act of 1964.

The defendants, collectively "Jetro," claim that plaintiffs are contractually foreclosed from

bringing these charges in federal court as they are bound to Arbitration Agreements. Verified

Answer (#18). Defendants argue that the Arbitration Agreements, included as exhibits to their

Verified Answer (#18-1, #18-2), mandate that arbitration is to be the exclusive method for

-1-

resolving employment disputes this workplace. Further, the defendants argue that the plaintiffs' allegations are time-barred as the Arbitration Agreements have a one-year statute of limitations for bringing employment discrimination or wrongful termination claims. As such, they have filed the instant Rule 12(c) Motion for Judgment on the Pleadings (#19).

Plaintiffs concede that their signatures appear on the Acknowledgements page and that they continued employment with Jetro after signing the page. Pl. Resp. (#23) at 6. Even so, plaintiffs argue that they were never provided with a copy of the Arbitration Agreement. Id.

## II.    Applicable Standard – 12(c)

A Motion to Dismiss under 12(b)(6) and a 12(c) Motion for Judgment on the Pleadings are reviewed under largely similar standards of review. The standard for a Judgment on the Pleadings has a key difference from a 12(b)(6) motion. In a 12(c) motion, "the court is to consider the answer as well as the complaint." Continental Cleaning Serv. V. United Parcel Serv., Inc., 1999 WL 1939249, at *1 (M.D.N.C. April 13, 1999) (internal citations omitted). In resolving a motion for judgment on the pleadings, the court may rely on admitted facts in the pleadings, documents attached to the pleadings, and facts contained in materials of which the court may take judicial notice. Bradley v. Ramsey, 329 F. Supp. 2d 617, 622 (W.D.N.C. 2004) (noting that the Court should consider documents attached to the pleadings); Hebert Abstract Co. v. Touchstone Prop., Ltd., 914 F.2d 74, 76 (5th Cir. 1990) (holding that court should consider pleadings and judicially noticed facts).

Federal Rule of Civil Procedure 12(c) provides that, "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." In resolving a motion for judgment on the pleadings, the court must accept all of the non-movant's

factual averments as true and draw all reasonable inferences in its favor. Bradley v. Ramsey, 329 F. Supp. 2d at 622; Atwater v. Nortel Networks, Inc., 394 F. Supp. 2d 730, 731 (M.D.N.C. 2005). Judgment on the pleadings is warranted where the undisputed facts demonstrate that the moving party is entitled to judgment as a matter of law. Bradley, 329 F. Supp. 2d at 622.

## III.    Arbitration Agreements Generally

This court is no proponent of arbitration in lieu of access to a judicial forum, especially where one party enters the agreement simply to secure employment. Such economic compulsion creates an uneven playing field, especially for the economically disadvantaged. See Drake v. Mallard Creek Polymers, Inc., No. 3:14-CV-00350-MOC, 2014 WL 6460242, at *1 (W.D.N.C. Nov. 17, 2014). The Equal Employment Opportunity Commission has noted in a non-binding policy statement that "agreements that mandate binding arbitration of discrimination claims as a condition of employment are contrary to the fundamental principles evinced" in the nation's employment discrimination laws. EEOC Policy Stmt. No. 915.002 (July 10, 1997).

However, this court recognizes that federal law presently mandates enforcement of valid arbitration agreements and follows that law. Perry v. Thomas, 482 U.S. 483, 489 (1987). It is equally clear from Fourth Circuit decisions that agreements to arbitrate employment disputes— even those that touch on important federal rights such as those found under the FMLA—must be enforced, Safrit v. Cone Mills Corp., 248 F.3d 306, 308 (4th Cir.2001), "no matter how sympathetic [the employee's] claims" may be. Singletary v. Enersys, Inc., 57 Fed. App'x. 161, 163–165, 2003 WL 264703, *2 (4th Cir.2003).

As an enforceable arbitration agreement would subordinate plaintiff's right to access the courts, it is the party seeking to compel arbitration that carries the burden of persuading this court

that the parties entered into an enforceable arbitration agreement. Accordingly, Jetro must demonstrate that the Arbitration Agreement is a valid and enforceable contract.

Federal courts reviewing agreements to arbitrate must apply state court principles governing contract formation. Hightower v. GMRI, Inc., 272 F.3d 239, 242 (4th Cir. 2001). In North Carolina, a valid contract "requires offer, acceptance, consideration, and no defenses to formation." Koltis v. N.C. Dep't of Human Res., 480 S.E.2d 702, 704 (N.C. Ct. App. 1997). In cases in which the facts support the conclusion that the parties formed an arbitration agreement, North Carolina law strongly favors arbitration. Hightower, 272 F.3d at 242; Martin v. Vance, 514 S.E.2d 306, 309 (1999). At issue here is whether there was mutual assent to the terms of the agreement. Accordingly, the court first considers whether there was a valid contract.

In addition, plaintiffs' have lodged an argument that even if the contract is valid, it should not be enforced. To that end, plaintiffs' contend that the contract is rendered unenforceable by the principles of unconscionability and equitable estoppel.

## IV.     Enforceability of the Agreement to Arbitrate

Taking the non-movant plaintiffs' version of facts as true, these individuals signed an acknowledgment form absent any terms of the arbitration policy itself. Jetro notes that the acknowledgment form contained the following language:

> I have read (or have had read to me in a language I understand), and I understand and agree to be legally bound by this Arbitration Agreement. I acknowledge that I have received a copy of the Arbitration Agreement and that it is my obligation to retain and refer to it as appropriate. I acknowledge that the Arbitration Agreement is binding upon both the Company and me. I acknowledge that my promise be bound by the Arbitration Agreement is given in exchange for my continued employment with the Company and the Company's promise to be bound by this Arbitration Agreement.

(#19-4, p. 5; #19-5, p. 5).

The facts in this case, at first glance, are largely similar to that of the restaurant employee plaintiff in <u>Hightower</u>, a Fourth Circuit decision from 2001. In <u>Hightower</u>, a restaurant manager attended a dispute resolution policy (DRP) meeting and signed a sheet acknowledging that "I have attended a DRP meeting and have received the information in regards to DRP." 272 F.3d at 241. It was undisputed in that case that the DRP was discussed at that meeting, in detail. <u>Id.</u> at 241 (noting that the plaintiff claimed that "only one percent of the meeting was devoted to the DRP…"). After the meeting, the plaintiff continued to work for the company. He was eventually terminated and brought suit based on employment discrimination. Hightower voluntarily submitted discrimination claims under the DRP to mediation. The <u>Hightower</u> court found that "[b]y continuing employment with GMRI for three months after he knew that the terms of the DRP would apply to him, Hightower demonstrated acceptance of the DRP." <u>Id.</u> at 243. The court further noted that it was "telling" that, as manager, Hightower was "was responsible for informing other employees that reporting to work after the DRP's August 3, 1998 implementation date constituted acceptance of its terms" and that he had initially brought his claim under the DRP's mediation option.

Applying <u>Hightower</u> to the present case, the court finds important distinctions. It is undisputed here that the plaintiffs signed the acknowledgement form, but it is a matter of dispute as to whether they had access to the terms of the binding arbitration policy at the time they signed that acknowledgment. Under the 12(c) standard, the court will take the plaintiffs' assertion as true that they had no ability to review the arbitration policy's terms.

While plaintiffs here were managers, their tasks were distinguishable from those of the manager in <u>Hightower</u>. The <u>Hightower</u> plaintiff was a manager when the company adopted its

DRP, and he was tasked with explaining to his employees the change in policy and that by continuing with employment, they were agreeing to that policy. The instant plaintiffs had a much more general task, to ensure "compliance with established policies and procedures," which did not include the Arbitration Agreement. Job Description (#24-2, p. 2). Unlike the plaintiff in Hightower, these instant plaintiffs did not initially seek to resolve their dispute under their company's dispute resolution policy requiring arbitration. Instead, they sought relief from the EEOC. After plaintiffs received their Right to Sue notice, they filed this action.

In the years since Hightower, the Fourth Circuit has recognized that continued employment after acknowledgement and review of the terms of a binding arbitration policy could create implied consent to a binding arbitration contract under North Carolina law. See Lorenzo v. Prime Communications, L.P., 806 F.3d 777 (4th Cir. 2015). While continuing employment and a signed acknowledgment page *could* create implied consent, it does not necessarily do so, especially absent actual notice of the arbitration policy's terms. As the Hightower court noted, "under North Carolina law, [c]ontinued employment with actual notice of the implementation of a dispute resolution program evidences an employee's mutual assent to the binding arbitration agreement contained therein." Hightower, 272 F.3d at 243 (quoting King v. Oakwood Home., Inc., No. Civ. 1:99-cv-59, 2000 WL 1229753 (M.D.N.C. Aug. 3, 2000)) (internal quotations omitted).

Under the facts averred by plaintiffs—which the court takes here as true pursuant to Rule 12(c)—an acknowledgement page was proffered to them regarding the arbitration policy's terms. They signed that page without being given any information regarding the binding arbitration policy's terms. Under plaintiffs' version of events, they are less like the Hightower plaintiff and

more similarly-situated to that of the plaintiff in <u>King v. Oakwood Home, Incorporated</u>.[1] In that case, the defendant company had: mailed information concerning the company's DRP to Plaintiff's residence; discussed the program as part of two sales meetings which Plaintiff may have attended; and attached a notice and copy of the program on a bulletin board. <u>King</u>, at *4. The Middle District of North Carolina applied state law to find that the defendant company had insufficiently established the <u>King</u> plaintiff's acceptance of the company's DRP as he lacked knowledge of the offer. <u>Id.</u>, at *3 ("Clearly, if Plaintiff had no knowledge of the offer, no act of his can be deemed an acceptance."). Specifically, the <u>King</u> court found that the plaintiff could pursue his claim in court and was not bound to the company's DRP because "Plaintiff was unaware of the Defendant's new dispute resolution program when he continued his employment with the Defendant beyond [the start of the new DRP] his conduct did not constitute acceptance." <u>King</u>, at *5.

The court finds the <u>King</u> decision and its reasoning compelling. Applying <u>King</u> to this case, the plaintiffs similarly lack actual notice of the company's binding arbitration terms at this stage of the proceedings. Taking the non-movant parties' version of events as true, plaintiffs signed an acknowledgement form, but lacked actual knowledge of the terms of the Agreement itself. As such, lacking knowledge of the terms of the agreement, their assent is without legal significance and are not subject to the Arbitration Agreement's terms, at least at this point in the proceedings.

Defendant contends that the DRP, and other human resources policies were available on the company's internal network site. <u>See</u> "HR Shared Drive!!!" #24-4. Even if this is true, it is

---

[1] The Fourth Circuit's decision in <u>Hightower</u> court is not inconsistent with the Middle District's <u>King</u> decision. As noted above, the <u>Hightower</u> court cited <u>King</u> favorably. Moreover, the Fourth Circuit's more recent <u>Lorenzo</u> decision stands for the proposition that implied assent *could* be created not that it is necessarily created by continued employment. Moreover, it was undisputed in <u>Lorenzo</u> that the employee-plaintiff had received the document containing the binding arbitration policy in that case. <u>See Lorenzo</u>, 806 F.3d 777, 789 ("Relying on an arbitration provision contained in its Employee Handbook, **which had been provided to Lorenzo when she began her employment**, [the Defendant] filed a motion to compel arbitration.") (emphasis added).

little different that the posting on the company's bulletin board in <u>King</u>. The policy's existence on the company's bulletin board or internal network site does not establish that (a) the plaintiffs actually read it or (b) the policy was provided to plaintiffs when they signed the acknowledgement form. For valid contract formation, North Carolina law requires:

> (1) assent; (2) mutuality of obligation; and (3) definite terms. *Id.* at 265, 672 S.E.2d at 553. "It is a well-settled principle of contract law that a valid contract exists only where there has been a meeting of the minds as to all essential terms of the agreement." *Northington v. Michelotti,* 121 N.C.App. 180, 184, 464 S.E.2d 711, 714 (1995); *see MCB, Ltd. v. McGowan,* 86 N.C.App. 607, 608, 359 S.E.2d 50, 51 (1987) ("In North Carolina, one of the essential elements of every contract is mutuality of agreement.... [The Parties] must assent to the same thing in the same sense, and their minds must meet as to all the terms.") (citation, quotation marks, and alterations omitted). Indeed, "[t]o be enforceable, the terms of a contract must be sufficiently definite and certain, and a contract that leav[es] material portions open for future agreement is nugatory and void for indefiniteness." *Miller v. Rose,* 138 N.C.App. 582, 587–88, 532 S.E.2d 228, 232 (2000) (internal citations and quotation marks omitted).

<u>Charlotte Motor Speedway, LLC v. Cty. of Cabarrus</u>, 230 N.C. App. 1, 7 (2013). As the contract lacked mutual assent, under plaintiffs' version of events, there was not a valid and enforceable agreement to arbitrate. As such, the court does not need to reach the discussion of defenses to the contract, as there was not a valid contract that would raise potential defenses.

## V.      Conclusion

When considering a Rule 12(c) Motion, a court must take the non-movant party's facts as true. Taking the plaintiffs' version of events as true, the court finds that plaintiffs lacked actual notice of the terms of the binding arbitration policy at the time of assent. Without actual notice of the contract's terms, the contract lacked mutual assent and is not valid and enforceable. Plaintiffs' signed acknowledgement pages do not bind them to terms they were not informed. Accordingly, the court will deny defendants' Motion for Judgment on the Pleadings.

**ORDER**

**IT IS, THEREFORE, ORDERED** that defendant's Motion for Judgment on the Pleadings (#19) is **DENIED.**

Signed: November 22, 2016

Max O. Cogburn Jr.
United States District Judge